IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Action No. 25- 46- UNA |
| RAKESHKUMAR PATEL | ) |
| Defendant. | ) |

## INFORMATION

The Acting United States Attorney for the District of Delaware charges that:

### COUNT 1
(Conspiracy to Commit Wire Fraud)

*INTRODUCTION*

1. The Defendant, Rakeshkumar Patel, and other unknown individuals (the "CO-CONSPIRATORS") orchestrated a scheme to defraud elderly victims of their savings across the country, including in the District of Delaware, by (i) contacting victims over the phone and impersonating federal agents using the aliases of real, former federal agents, (ii) convincing the victims that their identities had been stolen and that they were the subject of fake federal investigations, (iii) directing the victims to liquidate their savings, convert their savings into cash or gold, and provide that cash or gold to individuals posing as federal agents for "safekeeping"; and (iv) arranging for couriers who knew about the existence of the fraudulent scheme to pick up the cash or gold from the victims' residences or other public places.

FILED

APR 21 2025

U.S. DISTRICT COURT DISTRICT OF DELAWARE

1

## *MANNER AND MEANS OF THE CONSPIRACY*

2. From in or around May 2023 to in or around May 2024, Defendant Rakeshkumar Patel conspired with the CO-CONSPIRATORS to defraud elderly victims of at least $2,154,889 in the District of Delaware and elsewhere.

3. In this widespread fraud scheme, victims are contacted by a CO-CONSPIRATOR claiming to work at a federal agency such as the U.S. Drug Enforcement Administration ("DEA") or the U.S. Federal Trade Commission ("FTC"). The purported federal agent informs the victim that they are the subject of a federal investigation. The purported federal agent tells the victim that their identity has been stolen and is associated with suspicious criminal activity, and that they are the subject of a federal investigation. The purported federal agent calls from numbers appearing to be located in the United States, but the numbers are actually traceable to India. They also provide the victim with false federal agent credentials to establish credibility.

4. After establishing apparent credibility, the purported federal agent informs the victim that they could be subject to criminal liability if they fail to cooperate with the fake federal investigation. The victim is instructed to convert their savings to cash or gold and is then directed to give the cash or gold to another supposed law enforcement officer for safekeeping. In order to keep the victim from reporting the crime, and to encourage the victim to transfer additional funds in the future, the victim is told that the funds will be reimbursed back to them from the U.S. Department of the Treasury.

5. In reality, the funds are never reimbursed back to the victims. After the supposed law enforcement officers pick up the cash or gold from the victim, the cash or gold is laundered and distributed to scheme members.

*DEFENDANT AND THE CO-CONSPIRATORS DEFRAUD A VICTIM IN DELAWARE*

6. On August 15, 2023, a Delaware resident—VICTIM 1—answered a phone call from an unknown CO-CONSPIRATOR who purported to be a DEA agent. The CO-CONSPIRATOR convinced VICTIM 1 that she was implicated in a federal investigation. The CO-CONSPIRATOR told VICTIM 1 that she needed to cooperate with the DEA's investigation and, if she failed to do so, she could be subject to criminal penalties. The CO-CONSPIRATOR's phone number was traced to an IP address emanating in India.

7. In order to cooperate with the bogus DEA investigation, the CO-CONSPIRATOR told VICTIM 1 to liquidate funds in her personal bank accounts, convert those funds to gold, and hand the gold to other purported federal agents who would pick up the gold from her residence. The CO-CONSPIRATOR told VICTIM 1 that the funds would be deposited into an account belonging to the United States Department of the Treasury for safe keeping, and that the funds would be returned to her at an unspecified later date. The funds were never returned to VICTIM 1.

8. Between October 2023 and February 2024, on three separate occasions, VICTIM 1 delivered a total of approximately $701,529 worth of gold bars to CO-CONSPIRATORS posing as law enforcement agents who picked up

the gold from VICTIM 1's residence.

9. In order to coordinate their activities and work together to pick up cash and gold from VICTIM 1 and others, Defendant Patel and the CO-CONSPIRATORS communicated with one another through in-person meetings, mobile application messaging, social media services, and other means.

10. On April 22, 2024, a CO-CONSPIRATOR directed VICTIM 1 to liquidate an additional approximately $300,000.00 in funds from her bank account and to purchase four (4) kilograms of gold with those funds.

11. Between April 22, 2024 and May 20, 2024, Defendant Patel repeatedly searched the internet on his phone for "gold price kg" and "gold price today." On May 17, 2024, Defendant Patel sent a message via WhatsApp to a CO-CONSPIRATOR asking whether the "4kg"—or four kilograms of gold—had arrived yet.

12. On May 20, 2024, a CO-CONSPIRATOR coordinated with VICTIM 1 to send Defendant Patel—whom he claimed was a federal agent—to pick up the four kilograms of gold from VICTIM 1's residence. That same day, Defendant Patel rented a White Toyota Rav4 in New York, drove from New York to Delaware, and briefly arrived at VICTIM 1's residence before driving away and parking in a nearby park within a mile of VICTIM 1's residence.

13. Shortly thereafter, a CO-CONSPIRATOR called VICTIM 1 on the phone and told her that the purported federal agent would arrive to pick up the gold soon and would say the code word, which was "David."

14. At approximately 4:35 pm on May 20, 2024, a CO-CONSPIRATOR sent Defendant Patel a message via "WhatsApp" stating, "go." That message was traced to Patel's phone from an IP address emanating in India.

15. Within approximately ten minutes of receiving that message, Defendant Patel arrived in a White Toyota Rav4 in front of VICTIM 1's residence. A law enforcement officer—acting undercover as VICTIM 1—departed VICTIM 1's residence with a package containing fake gold bars and approached the passenger-side window of Defendant Patel's vehicle. Defendant Patel said the code word, twice: "David, David." The law enforcement officer then placed the package in passenger seat of Defendant Patel's vehicle, who drove away from VICTIM 1's residence before he was thereafter arrested.

*Charging Paragraph*

16. From in or around May 2023 to in or around May 2024, in the District of Delaware and elsewhere, Defendant Rakeshkumar Patel conspired with the CO-CONSPIRATORS to commit wire fraud in violation of 18 U.S.C. § 1343, by knowingly devising a scheme to defraud and, with the intent to defraud, carrying out that scheme by transmitting a writing by means of wire communication in interstate commerce, and did so knowing that an objective of the conspiracy was to commit wire fraud and intending to join together with at least one other person to achieve that objective.

All in violation of 18 U.S.C. § 1349.

## NOTICE OF FORFEITURE – COUNT 1

Upon conviction of the offenses in violation of 18 U.S.C. § 1349 set forth in Count 1 of this Information, Defendant Rakeshkumar Patel shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as the result of such violations, including but not limited to:

- A forfeiture money judgment of $2,154,889.

If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third party;
c. has been placed beyond the jurisdiction of the court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

SHANNON T. HANSON
Acting United States Attorney

By:   /s/ William E. LaRosa
      WILLIAM E. LAROSA
      Assistant United States Attorney

Dated: April 21, 2025